UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
DUSTIN ERWIN,                        )
    **Plaintiff**                        )
                                               )
v.                                   )
                                               )
CHRISTOPHER McDERMOTT               ) Civil Action No. **1:11-cv-11328NG**
DARVIN ANDERSON,                    )
THE CITY OF BROCKTON, and           )
FOXY LADY, INC.                     )
    **Defendants**                       )
_____         )

# MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANT FOXY LADY, INC. TO DISMISS

## Facts

We take the well-pleaded material facts as they concern Foxy Lady, Inc., from the Complaint. ***Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).** Defendant Foxy Lady, Inc., on information and belief, owns and operates a nightclub (**the nightclub**) in Brockton.¶5. On or about the evening of August 9th 2008 into the early morning hours of August 10th 2008, Plaintiff was at the nightclub, attending a bachelor party in his honor. While at the party, plaintiff ingested alcohol and became influenced by it.¶6.

The Defendant, Christopher McDermott, (**McDermott**) was at all pertinent times a City of Brockton Police Officer.¶7. McDermott was working a paid security detail that same evening at the nightclub. As such,

1

his *immediate* conduct was supervised and controlled by the nightclub, although he simultaneously remained under the supervision and control of the City of Brockton.¶8.   At all pertinent times, McDermott was dressed in his Brockton Police uniform, which clearly displayed the Brockton Police Department insignia. He was also carrying his police-issued handgun, handcuffs, mace and radio.¶9.

At some point, Plaintiff was asked by management to leave the establishment.  Although he may have protested briefly, he completely exited the establishment and left the club, stopping just outside near the parking lot. A number of the Plaintiff's friends followed after him, also completely exiting the establishment.¶10. Instead of allowing Plaintiff to leave the property, McDermott pursued him down a handicap ramp[1] and tried to physically grab him.¶11.  By now Plaintiff and others in his group had left the property of the nightclub and were in the contiguous Walgreen's parking lot. Intent on arresting Plaintiff, McDermott continued to pursue him and used his radio and called for additional officers.¶12.   Although he may have exchanged words with McDermott, Plaintiff had committed absolutely no crime.¶13.

---

[1] Plaintiff does not allege that he was handicapped at the time in question.

Suddenly and without warning, McDermott attacked Plaintiff by spraying mace at him. There was no good faith reason to spray the mace.¶14. Harmed and frightened by the mace, Plaintiff moved away from the officer and began to run away from the area of the nightclub and Walgreen's.¶15. Another Brockton Police Officer, Darwin Anderson, (**Anderson**) arrived on the scene.  Anderson was a K-9 (**dog**) officer and had a dog, "Gomo" with him.  Anderson intentionally used his motor vehicle to strike Plaintiff and knock him down.  Anderson, McDermott and the dog, Gomo, then continued to attack Plaintiff, causing him serious injury including contusions, bruises, lacerations, and canine bite marks.  Gomo was ordered by Anderson and McDermott to forcefully bite Plaintiff.¶16.   Plaintiff was hospitalized and suffered injuries in the form of puncture wounds, scrapes and bruises over his entire body.¶17.

Plaintiff was arrested and charged with several crimes, of which he was acquitted after trial in which he was represented by private counsel.¶18-22.  There continues to be a record of his arrest, and he suffers emotionally from having had to face criminal charges.¶23.

At all pertinent times, McDermott was employed by the nightclub as a "bouncer" or "security guard" or otherwise served as its servant or agent.¶58. The night club had duties: (a) to employ persons with the requisite skill and

abilities to interact with the general public as "bouncers"; (b) to provide appropriate training to any and all persons expected to interact with the general public as "bouncers"; (c) to provide appropriate supervision to any and all persons expected to interact with the general public as "bouncers";  to provide premises reasonably safe and secure for its intended use as an establishment licensed to serve alcohol.¶59.

The nightclub also had duties to provide a premise reasonably safe for their intended purpose, ¶60, but breached its duties set forth above in several ways, including but not limited to failing to adequately train McDermott, failing to adequately supervise him, failing to engage in appropriate service of alcohol, and failing to maintain a reasonably safe premises.¶61.  It is legally responsible for the acts of McDermott committed in furtherance of his employ.¶62.   As a result, it proximately caused great damage to the Plaintiff.¶63.

<u>Argument</u>

I.     **THE CURRENT STANDARD OF FEDERAL PLEADING.**

Two cases decided by the Supreme Court since 2007, ***Bell Atlantic Corp. v. Twombly***, 550 U.S. 554 (2007), and ***Ashcroft v. Iqbal***, 129 S.Ct. 1937 (2009), have to quote Gordon, "Convoluted In Court," ABA Journal (Jan. 2011), pg. 16, "significantly changed pretrial practice."

To summarize, the Court in Ashcroft, quoting Twombly, held, 129 S.Ct. at 1949:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' "
> (Page numbers of *Twombly* omitted.)

At p. 1950, the Court further stated:

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

The nightclub's position is that the allegations of this complaint are almost entirely conclusory and that the few facts that Plaintiff has asserted against it give rise to neither a federal cause of action under 42 U.S.C. §1983 nor any state claim cognizable under Massachusetts law and, assuming their veracity, do not plausibly give rise to an entitlement to relief.  They also fail

to show a reason for this court to exercise jurisdiction under 28 U.S.C. §1367.

## II.   THIS COURT LACKS JURISDICTION OVER COUNT TEN OR IN ANY EVENT SHOULD NOT EXERCISE IT UNDER 28 U.S.C. §1367.

We start with two fundamental propositions. One is that 42 U.S.C. §1983 creates a cause of action only against state actors. E.g., ***Briscoe v. LaHue***, 460 U.S. 325, 329-330 and n6 (1983). Nothing in the complaint could turn the nightclub into a state actor. The second is that this court, like all federal courts, is a court of limited jurisdiction. E.g., ***Exxon Mobil Corp. v. Allpath Services, Inc***. 545 U.S. 546, 552 (2005). When federal jurisdiction is questioned, the burden is on the party asserting it to prove it. ***Kokkonen v. Guardian Life Ins. Co. of America***, 511 U.S. 375, 377 (1994). Foxy Lady questions jurisdiction.

On the face of the complaint, Plaintiff came to the nightclub the night of August 9th 2008, had too much to drink, was asked to leave, and, after putting up some verbal resistance, left via a handicapped ramp. McDermott, in full Brockton police uniform, followed him down the ramp and into the Walgreen's parking lot. There, he radioed for and received assistance from another police officer. These officers, perhaps in Walgreen's parking lot,

perhaps elsewhere, but not on Foxy Lady's property, allegedly assaulted, battered, falsely arrested and imprisoned Plaintiff, who had done nothing wrong. We assume, without pausing to reflect on the subject, that *if* these events occurred as Plaintiff alleges they did, he may, under §1983, may be able to recover a judgment against one or more of the State actors named as Defendants. This court's jurisdiction over §1983 actions is not to be doubted.

The issue here is not whether the complaint states a claim against the nightclub, though as we shall see in Argument III, it does not, but whether there is a sufficient nucleus of facts giving rise to both Plaintiff's §1983 claim and his Massachusetts common law claim against Foxy Lady. What allegedly happened in the Walgreen's parking lot or outside it is neither temporally nor spatially related to what happened inside the nightclub. True, the time elapsed and the space traversed between the events at the club and the events in the Walgreen's parking lot do not appear to be very great. However, they are crucial. Plaintiff does *not* allege that the nightclub deprived him of any common law, statutory or constitutional rights when it asked him to leave. Even if he made such an allegation, it would be difficult to see how the deprivation had anything to do with the later events. If, as Plaintiff says, Officer McDermott was an agent of the nightclub when Plaintiff was asked to leave and even when he followed Plaintiff out the door,

7

the only plausible inference to be drawn from the complaint is that by the time Plaintiff was roughed up, arrested, and had charges pressed against him by two Brockton police officers, they were plainly acting in their official capacities. Plaintiff s stated cause of action against the nightclub, based on inadequate training of personnel and insufficient precautions against the behavior of the inebriated, does not involve any of the facts that Plaintiff will have to prove in a § 1983 action. Without such involvement, a federal court cannot exercise jurisdiction over the case.

We remind ourselves that pendant or supplementary jurisdiction is an exception to the provision of Article III limiting the jurisdiction of federal courts to, *inter alia*, "all cases in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made or which shall be made, under their Authority." The justification for this exception "lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them." ***United Mine Workers of America v. Gibbs***, 383 U.S. 715, 726 (1983). "The state and federal claims must derive from a common nucleus of operative fact." *Id.*,725.

On the allegations of the complaint, we would suppose that as against the State actors Plaintiff would be allowed to show that he was drinking at the nightclub, where he became intoxicated and which he was asked to leave, and that McDermott followed him out.  We submit that none of the subsequent incidents would be admissible against the nightclub and that none of the policies of the nightclub with respect to serving customers and training staff would be admissible against the State actors.  Hence, the allegations of Count Ten do not arise out of a nucleus of operative facts common to Counts One through Nine, and Count Ten is outside this court's jurisdiction.

Even if the Court were to conclude that it could exercise jurisdiction over Count Ten, as a matter of discretion it should not do so. 28U.S.C. §1367(c) states in relevant part:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if -
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction.

It is fairly obvious that State claims (lack of training, safety of premises) predominate in Count Ten.  Moreover, that Count presents if not a novel surely a complex issue of State law.  Massachusetts jurisprudence on when a police officer working a paid detail will be deemed an employee of the paying party is, to say the least, difficult to

9

follow.  We have found only two reported Massachusetts appellate cases in which the payer was deemed to be the employer.  These are *Cowen v. Eastern Racing Assoc.*, 330 Mass. 135, 140, 143-144, 111 N.E. 2d 752 (1953), and *Davis v. Del Russo*, 371 Mass. 768, 770-771, 359 N.E. 2d 313 (1977).  In both these cases, the officers' acts not only took place on the "employer's" premises but were undertaken at the express directions of other employees.

In several other Massachusetts appellate cases, the courts seemed to rule as a matter of law that officers working special details were not the payer's employee's.  See *Kidder v. Whitney*, 336 Mass. 307, 145 N.E. 2d 84 (1957); *Yates v. Salem*, 342 Mass. 460, 461-462, 174 N.E.2d 468 (1961); *Luz v. Stop & Shop, Inc. of Peabody*, 348 Mass. 198, 206, 202 N.E.2d 771 (1964); *Davis v. Allard*, 37 Mass App. Ct. 508, 513-514, 641 N.E.2d 121 (1994).  Although in Argument III, *infra*, we shall suggest a possible line dividing these cases, the *best* that can be said from Plaintiff's point of view is that Massachusetts law is unclear and should be resolved, if at all, by Massachusetts courts.

# III. THE COMPLAINT DOES NOT STATE AS AGAINST FOXY LADY A CLAIM ON WHICH RELIEF CAN BE GRANTED.

We return to the pleading standard now mandated in this Court by *Bell Atlantic* and *Iqbal*. By this standard, the only possible allegation of paragraphs 58-63 that is anything other than a conclusion is that McDermott was employed as a "bouncer" or "security guard" by the nightclub. Because, according to the complaint, McDermott was a police officer "dressed in Brockton Police uniform, which clearly displayed the Brockton Police Department insignia" and was also "carrying his police-issued handgun, handcuffs, mace and radio," "¶9, the last of which he could use and did use to ask for help from the department¶12, and because "he remained under the supervision and control of the City of Brockton,¶8, he would normally be an independent contractor. *Davis v. Allard, supra*. This is especially true where McDermott was "intent on arresting Plaintiff,"¶12, for the decision to arrest involves exercise of the sovereign power. *Commonwealth v. Gorman*, 288 Mass. 294, 299, 199 N.E. 618 (1934), quoting opinion of Holmes, J. in *Michigan Trust Co. v. Ferry*, 228 U.S. 346, 353 (1913). See also *Commonwealth v. Cheney*, 141 Mass. 102, 103 (1996) (officer not compelled to make arrest). It is not power that belonged to the nightclub to exercise or not exercise. Furthermore, if as the complaint strongly suggests, Plaintiff was in a state of

11

impairment by reason of his "ingestion" of alcohol, he was, under Massachusetts law, subject to involuntary seizure. ***Commonwealth v. O'Connor***, 406 Mass. 112, 119-120 and nn 6-7, 546 N.E. 2d 336 (1989), citing Mass. G .L.c. 111B, §8. For purposes of this point, it is not necessary to plumb the difference between seizure and arrest.

All of this adds up to two points. One is that on the face of the complaint the nightclub committed no wrong against Plaintiff while he was on or exiting its premises. The second is that any decision made by McDermott after Plaintiff left the nightclub was a decision made by one acting as a representative of the sovereign and not of the club. In making the latter point we focus on the plausibility requirement of ***Bell Atlantic***. It is plausible that a bouncer or security person would ask an intoxicated or unruly person to leave a nightclub. Plaintiff does not allege that McDermott actually did ask him to leave or that – a point we cannot emphasize enough – he should not have been asked to leave.

It is not plausible that a security person would, as part of the duties owed to the nightclub, try to arrest such a person after he had left. The nightclub has no interest in such an arrest, and making it, which would include bringing the arrestee to the police station and

booking him,[2] would actually distract the security person from his duties. In any event, Plaintiff was not arrested on the nightclub's premises. And once McDermott pursued Plaintiff to Walgreen's lot and radioed for assistance he had plainly stepped out of his alleged role as the nightclub's security person. The complaint does not suggest any training that the nightclub could (much less should) have given McDermott to prevent the incident here in question, nor, apart from bare conclusions, does it give even a hint of how it had failed in any duty owed to Plaintiff. In *Veranda Beach Club Ltd. v. Western Surety Co.*, 936 F.2d 1364, 1376 (1st Cir. 1991), the court held:

> It is settled law in Massachusetts that an employer may be held vicariously liable for an intentional tort committed by an agent or employee within the scope of the employment. ***Worcester Ins. Co. v. Fells Acres Day School, Inc*., *408* Mass. 393, 558 N.E.2d 958, 967 (1990). The Massachusetts Supreme Judicial Court (SJC) has established a tripartite test for determining scope-of-employment questions:
>
>> [C]onduct of an agent is within the scope of employment if it *is* of the kind he is employed to perform; if it occurs substantially within the authorized time and space limits; and if it is motivated, at least in part, by a purpose to serve the employer.

---

[2] See Mass. G.L.c.111B, §8; ***Commonwealth v. Jackson***, 447 Mass. 603, 614, 855 N.E.2d 1097 (2006).

*Veranda, supra*, goes on to hold that even if, as is not true here, the first two prongs of vicarious liability are satisfied, if the intention of serving the employer is lacking, there can be no vicarious liability.

The suggestion that the nightclub should have instructed McDermott on when he should radio for assistance and what he and those rendering assistance should do after they arrive is not merely implausible but ludicrous. Were the law to impose such a duty, it would in effect countenance private police forces answerable not to the public but to the persons that employ them. It is no business of any nongovernmental party to instruct a police officer on how he should perform his general duties. Nor should it be. At least in Massachusetts, only the sovereign may exercise sovereign powers. ***Opinion of the Justices***, 337 Mass. 777, 784, 150 N.E. 2d. 693 (1958). ***Opinion of the Justices***, 347 Mass, 797, 798-800, 197 N.E. 2d. 691 (1964). See ***Brown v. Russell***, 166 Mass. 14, 21-22, 43 N.E. 1005 (1896).

With this we return to a question raised but not answered in Argument II: what separates the situation in which a police officer on paid detail acts as the agent of the person paying him from the situation in which he acts as an independent contractor? We note that four conditions were present in ***Cowen v. Eastern Racing Assoc.***, *supra,* and

14

***Davis v. Del Russo***, *supra*. They are (1) that the plaintiffs were on the defendants' premises when the incidents occurred,³ (2) that the special detail police officers had not themselves witnessed the conduct that resulted in their being summoned but had only been informed of it by the defendants' employees,⁴ and (3) that these employees had specifically asked the police to intervene.⁵ Fourth, and perhaps most important, in both these cases the officers could be found to be furthering the owners' interests by, in ***Cowen***, expelling a customer supposedly interfering with the work of the racing stewards, 330 Mass. at 139-140, and in ***Davis***, dealing with a customer who had become involved in the beginning of a fray with another customer. 371 Mass. at 669-670.

None of these conditions is present here. It is not enough to say, as the complaint says, that McDermott's immediate conduct was supervised and controlled by the nightclub; that is a mere conclusion. Moreover, the word "immediate" suggests what common sense, see ***Maldonado v. Fontanes***, 568 F.3d 263, 268 (1ˢᵗ Cir.2009), would indicate: that on the nightclub's premises he could deal with rowdiness

---

³ 330 Mass. at 139-140; 371 Mass. at 769.
⁴ 330 Mass. at 140; 371 Mass. at 770
⁵ 330 Mass. at 140; 371 Mass. at 770

and misbehavior, if any occurred. It does not follow that he could be directed to make arrests, to pursue asked-to-leave customers outside the club and onto adjacent property, to radio for help while on that adjacent property, and to use unnecessary force once that help arrived. The nightclub cannot be plausibly held liable for any of these acts.

## Conclusion

For the reasons given, the motion to dismiss should be granted.

/s/ David Berman
David Berman, Esquire
BBO No. 040060
100 George P. Hassett Drive
Medford, MA 02155
Tel: (781) 395-7520
Fax: (781) 395-9658
davidberman2@verizon.net
Attorney for Defendant Foxy Lady, Inc.

## CERTIFICATE OF SERVICE

I, David Berman, counsel for Defendant, The Foxy Lady, above named certify that on **September 19th 2011**, I caused a copy of the within ***Memorandum in Support of Motion of Defendant Foxy Lady, Inc. to Dismiss*** to be served via electronic transmission upon:

**Robert S. Sinsheimer,** BBO No. 464940
rsinsheimer@sinsheimerlaw.com, ksheehan@sinsheimerlaw.com,
**Lauren Thomas,** BBO No. 667973
lthomas@sinsheimerlaw.com
Sinsheimer & Associates
92 State Street, 9th floor
Boston, Massachusetts  02109

and

**City of Brockton**
**Law Department**
( law@cob.ma.us )
City Hall
45 School Street
Brockton, Massachusetts  02301

/s/ David Berman
David Berman, Esquire

September 2011
[01].Erwin9.11