UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

DUSTIN ERWIN,                          )
     Plaintiff                    )
v.                                      )
                                     )
CHRISTOPHER McDERMOTT                   )        Civil Action No. 1:11-cv-11328
DARVIN ANDERSON,                        )
THE CITY OF BROCKTON, and               )
FOXY LADY, INC.                         )
     Defendants                   )

**MOTION OF PUTATIVE DEFENDANT FRANK'S OF BROCKTON,**

**INC. FOR LEAVE TO SUPPLEMENT ITS OPPOSITION TO PLAINTIFF'S**

**MOTION TO AMEND**

       **Putative Defendant Frank's of Brockton, Inc. (Frank's)**

**respectfully moves to supplement its opposition to Plaintiff's motion to amend**

**his complaint by substituting it as a party for Defendant The Foxy Lady, Inc.**

**It does so because since that opposition was filed on February 14th 2012,**

**Plaintiff has taken the deposition of Frank Caswell, Frank's president and**

**principal, and Defendant Christopher McDermott, transcripts (relevant**

**portions only) of which are annexed hereto as Exhibits A and B respectively,**

**and the Brockton Defendants have taken the deposition of Plaintiff, a**

**transcript (relevant portions only) of which is annexed hereto as Exhibit C.  It**

**is Frank's position that, taken together, these transcripts show that joining**

Frank's as a party would be futile, and, therefore, futility is one further reason for denying Plaintiff's motion.

We turn to the relevant portions of transcript:

> A.    Frank Caswell

He testified that the Brockton Licensing Commission requires the nightclub owned by Frank's and called The Foxy Lady to have a police officer on special detail on busy nights such as a Friday or Saturday.  Tr. 38-39.  The existence of the requirement negates any possibility of a relationship of agent and principal between Officer McDermott and Frank's, which is by definition based on "mutual consent."  *O'Neil v. Daimlerchrysler Corp.,* 538 F. Supp. 2d 304, 314 (D. Mass. 2008).  In the absence of such a relationship, there is no basis for application of the doctrine of respondeat superior, see *Burroughs v. Commonwealth*, 423 Mass. 874, 877, 673 N.E.2d 1217 (1996), which in turn would be the basis for holding Frank's liable on the facts of the complaint.

> B.    Christopher McDermott

Officer McDermott was working a special detail at the nightclub of August 9-10, 2008. Tr.73.  Plaintiff was escorted to the door.[1]  After he was outside the door and on the handicap entrance ramp, he yelled "fuck you," gave McDermott the finger, and either kicked or pushed the door.  He was

---

[1] We shall explain why and how when we come to Plaintiff's deposition testimony.

told to leave the property.  Plaintiff's friends apologized for his behavior and told McDermott that they would take care of it.  Once the friends had forcibly removed Plaintiff from the handicap ramp and were in the parking lot, Plaintiff began attacking them violently.  At this point, McDermott decided to arrest Plaintiff and radioed for help. Tr.39-42.

Officer McDermott did not escort Plaintiff to the door. Tr.73.  After Plaintiff was outside the door, McDermott made observations of him.  No employee of the nightclub had asked him to do so.  On the handicap ramp, Plaintiff was using profanities and his voice was loud.  After Plaintiff became louder, ignored requests to leave, and approached the door "aggressively," McDermott became convinced that Plaintiff was engaging in disorderly behavior.  But McDermott did not involve any employee of the nightclub in any action he took, and no such employee asked him to take any action.  Tr. 73-76.

If McDermott had not been doing a special detail at the nightclub but had been on duty as a police officer and observed Plaintiff's conduct, he would have made "some effort to find out what was going on." Tr.77.  If the owner of any nightclub had called the Brockton police and reported the activities in which Plaintiff was engaged, the police would have been dispatched. *Id.. A*s the problems with Plaintiff moved from the handicap ramp

to the parking lot to beyond it, no employee of the nightclub was involved.  Tr. 78-79.  Though McDermott would, if alerted by an employee of the club to a problem on its premises, respond to it, he would be doing so as a police officer on duty and not because of an order from the employee.  Tr.79.

McDermott is paid for his special duties at the nightclub by the City of Brockton (though the nightclub certainly pays the city) and not by the club itself. Tr.80.  He understood that on the night in question, the club wanted him to be on its premises, and by leaving the premises to arrest Irwin he was in fact absenting himself from the premises.  Tr.80-81.

We submit that McDermott's testimony makes it clear beyond peradventure that he had nothing to do with getting Plaintiff out of the club and that once Plaintiff was out the door, whatever action McDermott took he was taking as a police officer and not as an agent of the club.  Doubtless, the fact that he was on special detail on the night in question facilitated his observations and reactions.  But it is now clear from his own testimony that he did not act at the behest of any employee of the club or in any way try to serve it when he decided to do what he did.  He was in fact acting strictly as a Brockton police officer facing an affray resulting from, to put it politely, Plaintiff's loutish conduct.  Even without Plaintiff's testimony, which we are about to consider, it is clear that this case is in line with such cases as *Yates v.*

*Salem*, 336 Mass. 307, 308-309, 174 N.E.2d 84 (1961); *Luz v. Stop & Shop, Inc.*, 348 Mass. 198, 206-207 , 202 N.E.2d 771 (1964); and *Davis v. Allard*, 37 Mass. App.Ct. 508, 514, 641 N.E.2d 121 (1998) (per Kaplan, J., corporations not liable for conduct of police officer working a private detail). Here, Officer McDermott saw a situation that called for police intervention. Ultimately, recognizing that a crime was being committed, he arrested the perpetrator. *If the arrest was accompanied by greater force than the situation required, it was due to no error or omission on the part of Frank's.*

### C.    Plaintiff Dustin Erwin

At some point on the evening in question Erwin was informed by a waitress at the Foxy Lady that her manager had decided he could be served no more beer. By this time, in a space of no more than six hours, he had consumed *at least* thirteen and possibly several more beers.Tr.123. Erwin apparently did not take kindly to being cut off.[2] He "taunted" (his word) the waitress by drinking more beer after she had delivered the manager's message. Tr.125-126. He was then escorted to the door, but no employee ever touched him while he was being escorted. Once he was outside the enclosed premises of the nightclub he saw none of its employees. Tr.128.

---

[2]    At his deposition Erwin seemed to take the position, Tr. 122-23, that it was wrong to stop serving him even though in paragraph 6 of his complaint he states that he "ingested alcohol and became influenced by it." As to the potential liability of a licensee who serves a visibly intoxicated person, for injuries to others, see *Adamian v. Three Sons, Inc.*, 353 Mass. 498, 500-502, 233 N.E.2d 18 (1968), a much cited case.

At this point, we shall allow Plaintiff's deposition testimony to speak for itself.  At p.47, Plaintiff is asked what he said to Officer McDermott as he was leaving the nightclub; here is his answer:

> I said, you know – I said, you know, "Fuck you.  You can't arrest me 'cause I'm leaving.  How can you arrest me when I'm fucking leaving.  It's not my fault that you were picked on in high school and you fucking – now you got to be a cop.  You got to have your power over me.  I'm out of here.  I'm leaving  I'm leaving.  Look. I'm walking away."  And I walked.  I just left and I – I did keep saying more things, but I don't remember everything that I said and I was just, you know.

> We now quote p.48:

> Q.     What did you keep saying; do you recall?
> A.     I don't recall the things I said.  I'm sure some of them were repeats of what I said already.
> Q.     And when you were saying this, were you in the vestibule area of the Foxy Lady before getting to the door that led to the ramp?
> A.     I started there, yes.
> Q.     And these things that you were saying to the officer did you continue to say them through the vestibule area before you got to the first door that led to the ramp?
> A.     I started halfway through the vestibule area and I was continually saying it as I was walking out the door.  All of my friends were around me at that point, and I was, you know – we were leaving. . . .
> Q.     (BY MR. PFAFF)  Did the officer say anything to you while you were talking to him during this time?
> A.     Yes.
> Q.     What'd he say?
> A.     To be honest, I wasn't listening.

At pp.53-54, Plaintiff has left the premises and is walking down the ramp.  Here is his version of the events:

Q.    Did you keep yelling and swearing back at the officer?

A.    Yes.

Q.    Did any of your party do the same or was it just you?

A.    Yelling at the officer?

Q.    Yelling and swearing.

A.    No.  They were – they were yelling at me to stop.

Q.    And what happened next?

A.    We kept walking down the ramp.

Q.    And did you keep yelling back at the police officer?

A.    I was still – I was still yelling.  At one point – at the point that the officer turned around and went back inside to the vestibule, I stopped yelling.

I – like, I was still yelling, but my yells were no longer directed at him.  They were more of a – I don't know how to explain it.  It was someone's – let's say, you're pissed at somebody.  They're no longer there, and you're just venting with yourself and those around you, you know, fuck him, fuck this, but I'm no longer, you know, directing it at the officer.  The officer could no longer hear me once he went in the door as far as I was concerned.

At p.114 Plaintiff admits that he "was being disorderly" and that Officer McDermott had probable cause to arrest him.  As to the latter admission, Plaintiff is perfectly correct.  See *Sheehy v. Plymouth*, 191 F.3d 15, 22-23 (1st Cir. 1999).  Plaintiff owns a restaurant and has worked at several others.  Tr. 10, 13, 129-130.  He admitted that if a person were standing outside his restaurant doing what he was doing, he would call the police.  Tr. 130.

---

We could comment on the strength or lack of strength of Plaintiff's case against defendants other than putative defendant, Frank's, but as they are

represented by able counsel, we shall refrain from doing so.  The nub of
Count X is not that the owner of the nightclub was responsible for the assaults
committed on Plaintiff but that it failed to give proper training to Officer
McDermott as to how he should perform his duties.  On the present state of
the record, it was not open to the management of the nightclub to train
Officer McDermott to act in any particular way.  He was there not because
Frank's wanted him but because the Licensing Board insisted on his presence.
But it is unnecessary to consider to what extent, if any, Frank's could control
McDermott's conduct on its premises.  The issue simply does not arise in this
case.

What we have instead is a person who on leaving the club engages in
criminal behavior. Mass.G.L.c. 272, §53.  Officer McDermott observes this
behavior and decides to arrest that person.  He radios for help, and a
Brockton police car and State police car respond.  Was it really the duty of
Frank's to instruct any police officers on how they should respond to
disorderly persons outside the club?   The law imposes no such duty, and on
no state of the facts could a jury reasonably find Frank's to be in breach of
any duty owed Plaintiff.

Since Count X is founded on Massachusetts common law, we turn to it
so as to determine Officer McDermott's status vis-à-vis Frank's when the

incident in question occurred.   The evidence shows that he was *at* most and independent contractor.   This is true not only because of the lack of mutual consent but because of the manner in which he was paid and the inability of Frank's to control his actions.   See *Theo & Sons v. Mack Trucks,* Inc. 431 Mass. 736,742,729 N.E.2d 1113 (2000).   But even if he had been an agent while he was inside the building, he became an independent contractor once he left it to pursue and arrest Plaintiff.   Under Massachusetts law, a "person may be an agent or servant as to one part of an undertaking and an independent contractor as to order parts."   *Shea v. Bryant Chucking & Grinder* Co., 336 Mass. 312,314, 145 N.E. 2d 692 (1957).   Except in rare circumstances not present here, a person is not liable for the torts of an independent contractor. See *id* and cases cited.   And even if Officer McDermott were Frank's agent while off the premises, Frank's liability would be measured by the rule of *Theo &* Sons, 431 Mass. At 743, holding:

> Even where an agent-principal relationship exists, however, the principal has liability for the agent's acts toward third parties only if the agent was acting with the actual or apparent authority of the principal in that transaction.

Since here the officer had neither actual nor apparent authority from Frank's to pursue Plaintiff, Frank's cannot be liable for his conduct.

Futility of amendment is one more reason for denying Plaintiff's motion to amend.  Since Frank's would be entitled to summary judgment if it were made a party, the motion to make it a party should be denied.  *Cf. Sound of Music Co. v. Minnesota Mining & Mfg. Co.*, 477 F.3d 910, 924 (7th Cir. 2007).

## Conclusion

Frank's should be permitted to supplement its opposition by adding futility of amendment as a basis for opposing it.

By its attorney,

*/s/ David Berman*
**David Berman, Esquire**
**BBO No. 040060**
**100 George P. Hassett Drive**
**Medford, MA 02155**
**Tel:  (781) 395-7520**
**Fax: (781) 395-9658**
**davidberman2@verizon.net**

[19].Ervin.Mot.Amend

## Certificate of Service

I, David Berman, counsel for Defendant, *The Foxy Lady Inc.,* above named certify that on this **30th day of April, 2012,** I caused a copy of the within *Motion of Putative Defendant Frank's of Brockton, Inc. FOR Motion to Leave to Supplement Its Opposition to Plaintiff's Motion to Amend* to be served via electronic transmission upon:

**Robert S. Sinsheimer, Esquire** **rsinsheimer@sinsheimerlaw.com,**
**BBO No. 464940**
**Attorney Lauren Thomas** **lthomas@sinsheimerlaw.com**
**BBO No. 667973**
**Sinsheimer & Associates**
**92 State Street, 9th floor**
**Boston, Massachusetts  02109**

**Attorney Katherine McNamara Feodoroff**
BBO No. 657377 (kfeodoroff@cobma.us)
**Philip C. Nessralla, Jr**., Esquire
BBO No. 369380
Assistant City Solicitor
City Hall
45 School Street
Brockton, Massachusetts  02301

**Douglas I. Louison, Esquire** **dlouison@lccplaw.com**
**BBO #545191**
**Louison, Costello, Condon & Pfaff, LLP**
**101 Summer Street**
**Boston, MA 02110**
**(617) 439-0305**

**Stephen C. Pfaff, Esquire** **spfaff@lccplaw.com, lcristini@lccplaw.com**
**BBO #553057**
**Louison, Costello, Condon & Pfaff, LLP**
**101 Summer Street**
**Boston, MA 02110**
**(617) 439-0305**

[18].Brain.prod.docx.