UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DUSTIN ERWIN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. 1:11 CV 11328 |
| CHRISTOPHER MCDERMOTT, | ) | |
| DARVIN ANDERSON, | ) | |
| THE CITY OF BROCKTON, and | ) | |
| FRANK'S OF BROCKTON, INC. | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF DUSTIN ERWIN'S RESPONSE TO DEFENDANT FRANK'S OF BROCKTON'S STATEMENT OF UNDISPUTED MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1 IN SUPPORT OF SUMMARY JUDGMENT**

_____

Pursuant to Local Rule 56.1, the plaintiff Dustin Erwin submits his response to defendant Frank's of Brockton's Statement of Undisputed Material Facts:

1. This paragraph raises no material issue of disputed fact.

2. This paragraph raises no question of material fact.

3. This paragraph raises no question of material fact insofar as plaintiff stipulates that he drank at the hotel. Whether or not he began drinking "immediately upon arrival" is not evident from the cited record reference.

4. This paragraph raises no question of material fact insofar as ¶¶ 1-3 establish that plaintiff was drinking prior to his arrival at the club.

5. This paragraph raises no question of material fact.

6. This paragraph raises no question of material fact.

7. This paragraph raises no question of material fact.

8  This paragraph raises no question of material fact.

1

9. This paragraph raises no question of material fact.

10. This paragraph raises no question of material fact.

11. This paragraph raises no question of material fact.  It should be noted that he cited record reference states "we're going to have kick you out." (Defendant's LR. 56.1, Exhibit B, p. 39)

12. This paragraph raises no question of material fact.

13. This paragraph raises no question of material fact.

14. This paragraph raises no question of material fact.

15. This paragraph raises a question of material fact.  Mr. Erwin denies that he said these things and testimony of the witnesses at whom these comments were allegedly directed is not a part of the record.  The manager on duty, John Ferraro, could not provide a single name of a Foxy Lady employee who complained about Mr. Erwin.  (Defendant's LR 56.1, Exhibit D, Ferraro depo. pp. 24-25, Exhibit B

16. There is a material question of fact.  Plaintiff alleges he was asked to leave following ¶12 supra.  Defendant's self-serving testimony as to the fabricated reason he was asked to leave is not stipulated to.

17. This paragraph raises no question of material of facts insofar as it relays Ferraro's testimony.  It must be emphasized that the paragraph states something Ferraro stated, the accuracy of which is not stipulated, and in fact is denied.

18. This paragraph raises a question of material fact.  Mr. Erwin denies that he threw coins and the testimony of the witnesses at whom these coins were allegedly thrown is not a part of the record.

19. This paragraph raises no question of material fact but omits a large portion of the cited record reference.  (Exhibit 3, p. 47)

20. This paragraph raises no question of material fact.

21. This paragraph raises no question of material fact. It must be emphasized that the paragraph states something that McDermott stated he stated, the accuracy of which is not stipulated. (Exhibit 3, p. 47)

22. This paragraph raises no issue of material fact.

23. There is a material question of fact. Plaintiff had left the establishment peacefully and was not "defying" McDermott. (Exhibit 4, p 35-36)

24. This paragraph raises no issue of material fact.

25. There is a material question of fact. Plaintiff stipulates that McDermott followed him. The remainder of ¶25 represents McDermott's self-serving testimony, the accuracy of which is not stipulated to. As to whether or not the defendant and plaintiff eventually entered Walgreen's parking lot, this fact is not material. It should be noted, however, that there is no physical line of demarcation, it just looks like a continuous parking lot. See Caswell Depo pp. 64:

26. There is a material dispute of fact. The cited record reference does not indicate that the plaintiff was "raving at McDermott." (Exhibit 3, p. 62)

27. There is a material dispute of fact. The cited record reference does not indicate that the plaintiff was told he under arrest at the time indicated. (Exhibit 3, p. 62)

28. There is a material dispute of fact. The cited record reference does not indicate that the plaintiff said he "resisted." The cited testimony speaks for itself. (Exhibit 3, p. 62)

29. This paragraph raises no issue of material fact.

30. This paragraph raises no issue of material fact.

31. This paragraph is vague and may not accurately reflect the complete record. The record citation speaks for itself.

32. This paragraph raises no question of material fact. It must be emphasized that the cited record reference is to Caswell's deposition testimony, the accuracy of which is not stipulated. (Defendant's LR. 56.1, Exhibit F2, pp. 38-39).

33. This paragraph raises no issue of material fact insofar as plaintiff stipulates that McDermott was working at the Foxy Lady on August 9-10, 2008. The cited record reference, however, does accurately reflect the "special detail" language contained in ¶33.

34. This paragraph is a summary of McDermott's testimony. Plaintiff does not stipulate to McDermott's version of these events.

35. There is a material dispute of fact. Plaintiff indicates that McDermott was at the door when he was leaving. (Exhibit 3, p. 47)

36. This paragraph raises a material dispute of fact. It must be emphasized that the paragraph merely summarizes McDermott's testimony, the accuracy of which is not stipulated. (McDermott Depo. pp. 73-76, Exhibit E).

37. This paragraph raises a material dispute of fact. It must be emphasized that the paragraph merely summarizes McDermott's testimony, the accuracy of which is not stipulated. (Exhibit 2, pp. 73-76).

38. This paragraph raises no issue of material fact but it should be noted that it omits the fact that the nightclub pays the city. (See Exhibit 5 generally and Exhibit 4, pp. 48-49)

**PLAINTIFF'S ADDITIONAL STATEMENT OF UNDISPUTED MATERIAL FACTS**

1. The incident occurred on or about the evening of August 9, 2008 into the early morning hours of August 10, 2008.

2. Mr. Erwin and friends were attending a bachelor party in his honor at The Foxy Lady nightclub in Brockton.

3. While at the party, plaintiff ingested alcohol and became influenced by it.

4. On the evening of August 10, 2008, defendant McDermott was McDermott was working a special detail at The Foxy Lady. As such, his immediate conduct was supervised and controlled by The Foxy Lady.

5. McDermott's function was to "maintain order" of the interior and exterior of the Foxy Lady. (McDermott Depo, pp. 23, **Exhibit 2**)

6. The defendant would stand inside the club, in a common hallway, and would also walk around the parking lot. (McDermott Depo. pp. 23, **Exhibit 2**)

7. Depending upon the nature of the club's direction, McDermott would follow it. (McDermott Depo. pp. 23, **Exhibit 2**)

8. Plaintiff consumed alcohol prior to arriving at the Foxy Lady. (Erwin Depo. pp. 20, **Exhibit 3**)

9. The Foxy Lady has rules against accepting people already under the influence of alcohol. (McDermott Depo. pp. 23, **Exhibit 2**) Plaintiff was admitted to the club. Plaintiff was served alcohol in the club. (Erwin Depo. pp. 33-34, **Exhibit 3**)

10. There are times when McDermott takes direction from the Manager of the Foxy Lady. (McDermott Depo., pp.31, **Exhibit 2**)

11. The Foxy Lady manager on duty on August 10, 2008 was John Ferraro. (McDermott Depo. pp 33, **Exhibit 2)**

12. If management indicated there was a problem, McDermott would assist. (McDermott Depo. pp 31, **Exhibit 2)**

13. This was particularly so if it was a "security" type problem. (McDermott Depo. pp 32, **Exhibit 2**) McDermott's primary responsibility while working at the Foxy Lady is to

assist in the maintenance of security at the Foxy Lady.  (McDermott Depo. pp. 31, **Exhibit 2**)

14. McDermott's definition of "bouncer" is "someone who monitors the behavior inside the club and if there is a problem, they will ask someone to leave."  (McDermott Depo. pp. 37, **Exhibit 2**)

15. McDermott would observe the process of ID checks performed by the doorman.  (McDermott Depo. pp. 36, **Exhibit 2**)

16. Plaintiff was told by a server at the club that if he drank anymore they would have to "kick him out."  (Erwin Depo. pp. 39, **Exhibit 3**)  However, Plaintiff was not intoxicated.  (Exhibit 1, Tr. 93-97)

17. Just before 1:00 a.m. on August 10, 2008, the plaintiff was asked by management to leave the establishment.  (Ferraro depo. pp. 35-36, **Exhibit 4**)  According to Ferraro He approached Mr. Erwin and told him it was time to go.  (Ferraro depo. pp. 35, **Exhibit 4**)  Erwin left peacefully.  (Ferraro depo. pp 35-36, **Exhibit 4**)  He walked right out.  Ferraro depo.   pp. 35-36, **Exhibit 4**)  Erwin walked out calmly and went outside.  Ferraro Depo. pp. 37, **Exhibit 4**)

18. According to Foxy Lady witnesses, Frank Caswell ("Caswell"), is the highest ranking manager at Foxy Lady.  (Caswell Depo. pp. 38, **Exhibit 5**)   If Caswell is not on the premises, Ferraro is the highest ranking manager.

19. Ferraro is responsible for procuring security services.  (Caswell Depo. pp 38, **Exhibit 5**)  Ferraro calls up and requests the detail.  (Ferraro Depo. pp. 40, **Exhibit 4**)

20. McDermott has assisted in escorting Foxy Lady patrons from inside the club to outside the club. (McDermott Depo. pp 38, **Exhibit 2**)

21. McDermott says that at some point on August 10, 2008 McDermott was told that management was escorting Erwin from the club. (McDermott Depo pp. 41, 44, **Exhibit 2**)  McDermott followed Irwin. (McDermott Depo. pp. 41, **Exhibit 2**)

22. McDermott was inside the building. (McDermott Depo. pp. 41, **Exhibit** 2)  Erwin told McDermott that he could not arrest him because he didn't do anything wrong. (McDermott Depo. pp. 41, **Exhibit 2**)

23. McDermott agrees that swearing at an officer is not a crime. (McDermott Depo. pp. 45. **Exhibit 2**)  McDermott does not agree with "turning the other cheek" in such circumstances. (McDermott Depo. pp. 46, **Exhibit 2**)

24. Ferraro watched McDermott exit the club, approach Erwin, and then return to the inside of the club. (Ferraro Depo. pp 38, **Exhibit 4**)  Ferraro watched McDermott exit the club a second time and then return to the inside of the club. (Ferraro Depo. pp. 38-39, **Exhibit 4**)  Ferraro saw customers coming in and heard Erwin telling them that the club F---G sucks." At this point Ferraro watched McDermott exit the club a third time and ask him to get off Foxy Lady property. (Ferraro Depo. pp. 38-39, **Exhibit 4**)   Ferraro propped the door open so that he could see and hear it. (Ferraro Depo. pp. 40, **Exhibit 4**)  Ferraro exited the building. (Ferraro Depo. pp 40, **Exhibit 4**)

25. Ferraro claims he saw the physical altercation personally. (Ferraro Depo. pp 40-41, **Exhibit 4**)

26. Ferraro claims he continued to watch from the top of the handicap ramp. (Ferraro depo. pp. 41, **Exhibit 4**)

27. McDermott was "really upset" when he left the Foxy Lady to pursue Erwin.  (Ferraro Depo. pp 74, **Exhibit 4**)

28. McDermott followed Erwin and attempted to grab his shirt. McDermott Depo pp. 4.  When McDermott grabbed Erwin's shirt he does not remember if he was going to arrest him or just convince him to calm down and leave."  (McDermott Depo. pp. 48, **Exhibit 2**)

29. McDermott pepper sprayed Erwin's face.  (McDermott Depo pp. 42, **Exhibit 2**)  Erwin ran and McDermott chased after him.  (McDermott Depo pp. 42, **Exhibit 2**)  McDermott tackled Erwin to the ground and a struggle ensued. (McDermott Depo pp. 43, **Exhibit 2**)

30. McDermott struck Erwin's face.  (McDermott Depo. pp. 43, **Exhibit 2**)

31. Foxy Lady pays the City of Brockton directly for McDermott's services.  (Ferraro Depo. pp 48-49., **Exhibit 4**; "Invoice for Details" **Exhibit 6**)

32. Ferraro told McDermott that he was going to ask Erwin to leave. (Ferraro Depo. pp. 70, **Exhibit 4**)  He did this before he asked Erwin to leave. (Ferraro depo. pp 70, **Exhibit 4**)

33. McDermott watched Ferraro as he spoke to Erwin about leaving the club.  (Ferraro depo. pp. 70, **Exhibit 4**)

34. Farrero says that initially, Ferraro and McDermott remained inside the club conversing while Erwin was outside.  (Ferraro depo . pp 71, **Exhibit 4**)

35. Michael Zavala states that  the men were asked to leave the bachelor party because they refused to be scammed by dancers.  He said that they paid the dancers for a lap dance in Mr. Erwin's honor.   After the dancers completed the dance, they claimed they hadn't been paid. (**Exhibit** 1, Tr. 85)

8

36. Zavala and management got into a brief argument during which, Zavala made peace by offering to split the difference. (**Exhibit 1,** Tr. 86)  The men were not loud or obnoxious. (**Exhibit** 1, Tr. 86)

37. Mr. Erwin had a "good buzz," but was not intoxicated. (**Exhibit** 1, Tr. 87)

38. The men were not driving a vehicle; they had taken cabs to the club. (**Exhibit** 1, Tr. 82-85)

39. The men were suddenly asked to leave, apparently in retaliation for protesting the scam.

40. Zalvala states that upon being asked to leave a cab was immediately called.  (**Exhibit** 1, Tr. 94)

41. A Mr. Robert Flinn echoes Zavala's testimony.  (**Exhibit 1**)

                                          Respectfully Submitted:
                                          PLAINTIFF,
                                          By his attorneys,

                                          */s/ Robert S. Sinsheimer*
                                          Robert S. Sinsheimer, BBO No. 464940
                                          Lauren Thomas, BBO No. 667973
                                          Michael R. Harriman, BBO No. 680061
                                          SINSHEIMER & ASSOCIATES
                                          92 State Street, 9th Floor
                                          Boston, MA 02109
                                          (617) 722-9954

Dated: March 19, 2013

## Certificate of Service

     I hereby certify that this document, without attachments, filed through the ECF System will be sent with all attachments via first class mail to all registered and nonregistered participants on March 19, 2013.

                                          */s/ Robert S. Sinsheimer*